## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: EXACTECH POLYETHYLENE ORTHOPEDIC PRODUCTS LIABILITY LITIGATION | **MDL No. 3044** |
| This Document Relates To: | **Case No.: 22-MD-3044 (NGG) (MMH)** |
| NANCY RIVERA-PIZARRO, Plaintiff, | |
| v. | **DIRECT FILED COMPLAINT PURSUANT TO AMENDED PRACTICE AND PROCEDURE ORDER NO. 2** |
| EXACTECH, INC., and EXACTECH, US, INC., Defendants. | |
| Case No.: | |

Plaintiff, Nancy Rivera-Pizarro, brings this action for personal injuries suffered as a direct and proximate result of the misconduct of Defendant Exactech, Inc., and Defendant Exactech US, Inc., (collectively, "Defendants" or "Exactech") and demands a trial by jury. In support of his Complaint, Plaintiff alleges as follows:

## NATURE OF THE CASE

1.     This personal injury action relates to Exactech's misconduct with respect to its design, testing, manufacturing, packaging, storage, labeling, distribution, marketing, or sale of the Optetrak, Optetrak Logic, and Truliant Total Knee Arthroplasty ("TKA") Systems as well as the Vantage Total Ankle Arthroplasty ("TAA") System.[1]

---

[1] For the sake of brevity, this Complaint will refer to the Truliant TKA and Vantage TAA Systems simply as "Truliant" and "Vantage," respectively, and to the Optetrak and Optetrak Logic TKA Systems simply as "Optetrak."

2.      For many Americans, the solution to chronic or worsening knee or ankle joint pain is to replace the joint in its entirety. While most knee and ankle joint replacements last for several years, Exactech's Optetrak, Truliant, and Vantage systems fail sooner and more often than others on the market.

3.      Exactech admit many of these premature and frequent failures are due to the improper packaging of a component part—the polyethylene insert—which exposes the part to oxygen, causing it to oxidize, and ultimately to deteriorate at an accelerated rate. This eventually leads to premature failure of the entire knee or ankle system.

4.      Because of Exactech's negligence, including its inadequate packaging of this component part, thousands of patients implanted with Optetrak, Truliant, and Vantage Systems have had to undergo (or likely will have to undergo) significant revision surgeries to remove and replace the defective devices.

5.      Indeed, Plaintiff was implanted with an Optetrak TKA System ("Exactech TKA System"), which failed prematurely, resulting in the need for a revision surgery, and causing significant and continuing personal injuries as well as for Plaintiff to incur substantial medical bills and expenses.

6.      Accordingly, Plaintiff brings the instant suit, demands judgment against Exactech, and requests, among other things, compensatory damages, statutory damages, punitive damages, attorneys' fees, and costs.

## THE PARTIES

### PLAINTIFF

7.      Plaintiff, Nancy Rivera-Pizarro, is a resident Brooklyn, New York, in

Kings County and, thus, a citizen of New York.

8.      In approximately 2012, Plaintiff was implanted in the state of New York with an Optetrak TKA System, which failed prematurely.

9.      As a result of the failure of her Optetrak TKA System, Plaintiff had to undergo a revision surgery in 2015, where her doctor—not knowing the unique risks of Exactech's TKA and TAA Systems—implanted another a Truliant TKA, which also suffered from the same defects.

10.     As a direct result of Exactech's misconduct and concealment of the risks associated with its TKA and TAA Systems, Plaintiff has required additional physical therapy, and incurred substantial medical bills and expenses. And, because she was implanted with another faulty Exactech TKA System, she is likely to experience another premature failure (and resulting sequalae) in the future.

**DEFENDANTS**

11.     Defendant Exactech, Inc., is a corporation incorporated in Florida with its principal place of business located at 2320 NW 66th Court, Gainesville, Florida 32653.

12.     Defendant Exactech, Inc., designs, tests, develops, manufactures, labels, packages, markets, distributes, or sells orthopedic joint replacements, including the Optetrak, Truliant, and Vantage Systems and related surgical instrumentation, throughout the United States, including in the State of New York.

13.     Defendant Exactech, Inc., was engaged in promoting, distributing, selling, or otherwise introducing its TKA and TAA Systems into interstate commerce

throughout the United States, including in the State of New York, and generating substantial revenue as a result.

14.    Defendant Exactech, Inc., manufactured the TKA System implanted in Plaintiff.

15.    Defendant Exactech US, Inc., is a wholly owned subsidiary of Exactech, Inc., with its principal place of business located at 2320 NW 66th Court, Gainesville, Florida 32653.

16.    According to public filings, Defendant Exactech US, Inc., conducts Exactech's U.S. sales and distribution activities.

17.    Defendant Exactech US, Inc., is engaged in the business of promoting, distributing, selling, or otherwise introducing its TKA and TAA Systems into interstate commerce throughout the United States, including in the State of New York, and generating substantial revenue as a result.

18.    The Optetrak, Truliant, and Vantage Systems manufactured by Defendant Exactech, Inc., were distributed by Defendant Exactech US, Inc., throughout the United States, including in New York, where both Plaintiff's initial and revision surgeries occurred.

19.    Corporation Service Company at 1201 Hays Street, Tallahassee, Florida 32301 is a registered agent of or is authorized to accept service of process for both Exactech, Inc., and Exactech US, Inc.

## JURISDICTION & VENUE

20.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332,

because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and because there is complete diversity of citizenship.

21.    This Court has personal jurisdiction over Exactech because each through its respective employees, agents, or sales representatives have transacted business in the State of New York and within the Eastern District of New York; solicited residents of the State of New York; and engaged in substantial business activities—including, but not limited to, activities giving rise to the events and misconduct described in Plaintiff's complaint, upon information and belief. Accordingly, Defendants both have sufficient minimum contacts with the State of New York such that it does not offend traditional notions of fair play and substantial justice to have them answer for its misconduct in this Court.

22.    Additionally, a significant portion of the actions and omissions described in Plaintiff's complaint took place in the State of New York.

23.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because both Defendants transact and conduct business in New York, a substantial part of the acts giving rise to this Complaint occurred in New York, and because Plaintiff is a resident and citizen of New York.

## FACTUAL BACKGROUND

### *Knee and Ankle Replacements and Components*

24.    Total knee arthroplasty or total ankle arthroplasty is a common orthopaedic surgery that involves replacing the articular surfaces of the joint with

smooth metal and highly cross-linked polyethylene plastic.[2]

25.    For example, in a total knee arthroplasty the femoral condyles and tibial plateau of the knee joint are replaced.

**Knee Joint**



**Ankle Joint**



26.    Arthroplasty polyethylene inserts are the plastic liners placed between the two metallic surfaces in a fixed-bearing knee or ankle replacement. In essence, these polyethylene inserts serve as cushions—or shock absorbers—between the metal components in knee and ankle replacements.

### *Exactech® Knee and Ankle Polyethylene Inserts*

27.    Exactech's TKA systems are classified as a knee joint patellofemorotibial polymer/metal/polymer semi-constrained cemented prosthesis. They feature a mix of polyethylene and metal-based components.

28.    Exactech's TKA systems are comprised of the following parts: a femoral cap, a tibial tray, and sometimes a patellar cap.  The patellar cap and tibial tray are

---

[2] For illustrative purposes, below are diagrams of the knee and ankle joints.

both made of polyethylene.

29.      Exactech's TKA systems are comprised of the following parts: a femoral cap, a tibial tray, and sometimes a patellar cap.  The patellar cap and tibial tray are both made of polyethylene.



### Properties of Polyethylene and its Use in TKA and TAA Systems

30.      Polyethylene is a polymer of ethylene—a hydrocarbon—which consists of as many as 200,000 ethylene repeat units. Ethylene is polymerized in the presence of catalysts to make ultra-high molecular weight polyethylene ("UHMWPE"), which is commercially produced as resin powder. The resin powder is then consolidated into rods/sheets from which final inserts found in TKAs and TAAs are made.

31.      Polyethylene is a significant element of TKAs and TAAs, and its development has undergone considerable changes in the last thirty years. While polyethylene is commonly used in TKAs and TAAs, there are several concerns with *in vivo* use. Specifically, polyethylene inserts cannot be exposed to oxygen during the packaging and storing process. Exposing polyethylene inserts to oxygen creates a chemical reaction called oxidization, which causes the premature wear or degradation of polyethylene inserts. As such, polyethylene inserts must be handled with a high

degree of care when processed, packaged, and stored.

32.    The oxidation process is time-dependent and can also occur before the liner is even implanted in a patient, if the liner is exposed to air. Thus, airtight packaging is crucial and requires multiple barriers that adequately prevent oxidation.

33.    Wear characteristics of polyethylene are directly influenced by techniques of processing, storing, and packaging methods. These processes are significantly aimed at preventing the oxidation of the polyethylene inserts. Proper packaging and storage prevent oxidation and reduce the risk of failure from strength changes in the polyethylene inserts. Indeed, preventing the oxidation of polyethylene through proper processing, storing, and packaging methods directly prevents the wear of the polyethylene inserts.

34.    Wear of polyethylene is a direct cause of component loosening and other component failures. Accordingly, the wear of polyethylene components is likely to cause severe complications, including swelling, grinding, instability, tissue damage, osteolysis, permanent bone loss and other injuries. This ultimately causes the entire systems to fail and patients to need revision surgeries.

### The Importance Of Appropriate Packaging Is Well-Understood

35.    It is widely understood in the medical device industry that if polyethylene components are exposed to air, they will oxidize and degrade. Accordingly, when manufactured and stored, polyethylene components must and should be packaged in multiple-layered, sufficiently oxygen-resistant vacuum-sealed bags.

36.    Indeed, throughout the medical device industry, precautions are taken to ensure polyethylene components are properly packaged to avoid oxidation.

37.    For example, the manufacturer Smith & Nephew, which began producing the Salto™ ankle systems in 2006, an ankle replacement system with polyethylene, uses a "double peel package" when sterilizing and packaging its ankle polyethylene products.

### Exactech's False & Misleading Performance Claims

38.    Exactech represented to doctors, patients, and the general public that its fleet of TKA and TAA systems were safe, effective, and, in some cases, even superior to other joint replacement systems on the market.

39.    For example, in marketing materials Exactech boasted it's TKA systems had "excellent clinical and laboratory results,"[3] and that "surgeons [could] have confidence in a knee system that continues to demonstrate *performance over time.*"[4]

40.    In fact, Exactech went even further and specifically made representations regarding the quality of the materials it used in its TKA and TAA systems.

41.    For instance, with respect to its polyethylene components, Exactech claimed "Exactech's proprietary net compression molding process is proven to yield consistent consolidation, resulting in uniform material properties, smooth articular surface and oxidation resistance."

42.    The company went further to claim that its proprietary net compression

---

[3] Available on Exactech's website, online at https://www.exac.com/knee/optetrak-logic-primary-system/.
[4] *Id.*

molded polyethylene inserts had "[s]uperior [w]ear [c]haracteristics"[5] resulting in a liner with "natural resistance to oxidation."[6]

43.    Exactech's marketing materials similarly boasted low revisions rates.

44.    And, notably, Exactech's marketing materials did not disclose several investigations and ongoing claims that its TAA and TKA systems were, in fact, failing much sooner and at much higher rates than others on the market.

45.    These representations appeared in marketing materials, which were distributed to surgeons and to patients, but were also readily available on Exactech's website, which is equally accessible to patients, doctors, and the general public.

46.    Indeed, all of these representations regarding safety and efficacy were false or misleading and were easily accessible to anyone—whether a physician, a patient, or a patient's family member—to read and review.

47.    Upon information and belief, all of these representations were made with the knowledge that they would be published widely, including on the Exactech website, and without care for their truth or accuracy.

### Exactech's History of TKA and TAA Performance Issues

48.    Upon information and belief, as early as 2012, Exactech was aware (or should have been aware) that its TKA systems were failing at a higher rate than promoted due to the oxygenation of the polyethylene components.

49.    For example, reports in the Manufacturer and User Facility Device Experience (MAUDE) database in 2012 indicate instances of revision due to "loose

---

[5] *Id.*
[6] *Id.*

tibial component", "aseptic loosening", "pain and visible loosening", "polyethylene deformation", "polyethylene worn", and "pain, limited mobility, knee swelling and sensitivity" caused by loosening in the joint replacement.

50.   Additional examples from 2014 list "revision due to tibial loosening", "tibial loosening", "revision of [O]ptetrak knee components due to tibial loosening", "revision due to pain and loosening", and "revision of [O]ptetrak knee components due to aseptic loosening", as well as several reports of "revision of knee components due to tibial loosening", and "revision of [O]ptetrak knee components reportedly due [to] aseptic loosening".

51.   And this experience was not unique to U.S. patients. Upon information and belief, according to the 2020 Australian National Joint Replacement Registry, the rate of revision for a TKA utilizing an Optetrak tibial component with a Optetrak-CR femoral component was 8.5% at ten (10) years and 10.2% at ten (10) years when implanted with a Optetrak-PS femoral component; both rates far exceed international guidelines for acceptable revision rates, upon information and belief.

52.   Likewise, upon information and belief, accord the Australian Orthopaedic Association has remarked that the Optetrak or Truliant TKA Systems have a "higher-than-expected" rate of revision.

53.   Upon information and belief, per the recommendations established by the International Benchmarking Working Group and applied by the Australian Orthopaedic Association, the Optetrak or Truliant TKA Systems do not qualify for a "superiority benchmark" or even a "non-inferiority benchmark" because of its high

failure rate.

### *Exactech Was Aware Of The Problem, But Did Nothing*

54.    Upon information and belief, it is widely recognized and accepted in the medical device industry that reported AERs represent only a small fraction of adverse events associated with and/or caused by a particular device.

55.    Despite Exactech's knowledge of early onset failures of its TKA systems, Exactech continued to design, warrant, manufacture, promote, sell, and distribute them without alerting surgeons or patients of its potential increased risks of early onset failures.

56.    Exactech never changed the labeling, marketing materials, or product inserts to adequately and accurately warn patients or doctors of the associated increased risks of early failure due to loosening or polyethylene wear.

57.    Exactech did, however, quietly—and without providing information or explanation for its decision to patients, doctors, or the general public—begin replacing the tibial trays of some Optetrak models.

### *Exactech's Recent (and Repeated) Recall of TKA, TAA, and Hip Systems*

58.    Finally, in August 2021, Exactech recalled a limited number of its TKA and TAA systems.

59.    Upon information and belief, Exactech notified distributors and sales representatives of the limited recall on approximately August 30, 2021, in a letter entitled 'URGENT MEDICAL DEVICE RECALL.' In part, the letter clarified that Exactech was "removing all Knee and Ankle UHMWPE products labeled with an 8-

year shelf life and not packaged in EVOH/Nylon bags, in a phased approach over 12 months." [7]

60.    Upon information and belief, the actions and timing as to each phase was described as follows:

**Phase 1:** immediately return all knee and ankle UHMWPE devices labeled with an 8-year shelf life that will be 5 years old or older by 08/31/2022 not packaged in EVOH/Nylon bags.

**Phase 2:** between 05/31/2022 to 08/31/2022, returning all remaining knee and ankle UHMWPE devices labeled with an 8-year shelf life not packaged in EVOH/Nylon bags." [8]

61.    Notably, Exactech did not issue any communications to surgeons who had implanted Optetrak, Truliant, or Vantage Systems with a recalled polyethylene component or to patients who had received an Optetrak, Truliant, or Vantage Systems with a recalled polyethylene component until months later in February 2022.

62.    On February 7, 2022, Exactech issued an "Urgent Medical Device Correction" in which it informed health care professionals that:

After extensive testing, we have confirmed that most of our inserts manufactured since 2004 were packaged in out-of-specification (referred to hereafter as "non- conforming") vacuum bags that are oxygen resistant but do not contain a secondary barrier layer containing ethylene vinyl alcohol (EVOH) that further augments oxygen resistance. The use of these non-conforming bags may enable increased oxygen diffusion to the UHMWPE (ultra-high molecular weight polyethylene) insert, resulting in increased oxidation of the material relative to inserts packaged with the specified additional oxygen barrier layer. **Over time, oxidation can severely degrade**

---

[7] *See* U.S. FOOD & DRUG ADMIN., *Class 2 Device Recall OPTETRAK Comprehensive Knee System* (Oct. 04, 2021) https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfRES/res.cfm?id=189015
[8] *Id.*

13

**the mechanical properties of conventional UHMWPE, which, in conjunction with other surgical factors, can lead to both accelerated wear debris production and bone loss, or component fatigue cracking/fracture, all leading to corrective revision surgery.[9]**

63.     The "Urgent Medical Device Correction" clarified that Exactech was expanding its recall to now include all knee arthroplasty polyethylene inserts packed in non- conforming bags regardless of label or shelf life. The components subject to the recall now included: OPTETRAK®: All-polyethylene CR Tibial Components, All-polyethylene PS Tibial Components, CR Tibial Inserts, CR Slope Tibial Inserts, PS Tibial Inserts, HI-FLEX® PS Tibial Inserts; OPTETRAK Logic®: CR Tibial Inserts, CR Slope Tibial Inserts, CRC Tibial Inserts, PS Tibial Inserts, PSC Tibial Inserts, CC Tibial Inserts; TRULIANT®: CR Tibial Inserts, CR Slope Tibial Inserts, CRC Tibial Inserts, PS Tibial Inserts, PSC Tibial Inserts; and VANTAGE Fixed-Bearing Liner Components.[10]

64.     In its February 7, 2022 correspondence, Exactech advised surgeons that revision surgery should be considered for patients who exhibited symptoms consistent with premature polyethylene wear.

65.     Exactech has subsequently expanded its recall multiple times to include additional liners incorporated in its knee and hip replacement systems.

**PLAINTIFF'S FAILED IMPLANT & SUBSEQUENT REVISION SURGERY**

66.     On July 9, 2010, Plaintiff, Thomas Gallo, underwent a TKA on his left

---

[9] *See* Exactech's "Urgent Medical Device Correction" letter, dated Feb. 7, 2022, available online at: https://www.exac.com/wp-content/uploads/2022/02/Exactech-DHCP letter.02.07.2022.pdf.
[10] *Id.*

knee and was implanted with an Exactech Optetrak TKA System in New York.

67.    Plaintiff's Exactech Optetrak TKA System subsequently failed requiring a revision surgery in October 2019, in New York.

68.    Regrettably, he and his doctor—due to Exactech's misconduct—were unaware of the unique risks posed by an Exactech TKA System, so he was implanted with another Exactech TKA System.

69.    Because he required an additional revision surgery, Plaintiff has suffered significant and continuing personal injuries, is limited in his activities of daily living, requires additional physical therapy, and has incurred substantial medical bills and expenses.

70.    And, because he was implanted with another Exactech TKA System, Plaintiff is likely to experience another premature failure (and resulting sequalae) in the future.

71.    As a direct, proximate and legal consequence of the defective nature of the Exactech TKA System (and Exactech's concealment of the defective nature of its TKA and TAA Systems), Plaintiff has suffered and continues to suffer significant, permanent, and continuing personal injuries, as described herein.

## EQUITABLE TOLLING OF STATUTE OF LIMITATIONS

72.    Exactech willfully, wantonly, or intentionally withheld information from Plaintiff, Plaintiff's healthcare providers, and the public concerning the known hazards associated with its Optetrak, Truliant, and Vantage Systems.

73.    Exactech willfully, wantonly, or intentionally withheld safety-related

warnings from Plaintiff, Plaintiff's healthcare providers, and the public concerning the known hazards associated with its Optetrak, Truliant, and Vantage Systems.

74.     Exactech willfully, wantonly, or intentionally withheld instructions from Plaintiff, Plaintiff's healthcare providers, and the public regarding how to identify, mitigate, or treat known hazards associated with its Optetrak, Truliant, and Vantage Systems.

75.     Exactech willfully, wantonly, intentionally conspired, and acted in concert to ignore relevant safety concerns and deliberately not study the long-term safety and efficacy of its Optetrak, Truliant, and Vantage Systems, including the polyethylene liners used in its Optetrak, Truliant, and Vantage Systems.

76.     Exactech failed to disclose a known defect in its design, packaging, or delivery of its Optetrak, Truliant, and Vantage Systems, including the polyethylene liners used in its Optetrak, Truliant, and Vantage Systems, and instead affirmatively misrepresented that its TKA and TAA systems were as safe as—or even "superior" to—other comparable TKA and TAA systems on the market.

77.     Due to the absence of any warning or other information by Exactech as to the significant health and safety risks posed by its Optetrak, Truliant, and Vantage Systems—more specifically, the polyethylene liners used in its Optetrak, Truliant, and Vantage Systems—Plaintiff was unaware that his TKA contained a faulty liner, which was likely to cause a premature failure of the entire joint replacement system. Additionally, this danger was not known to Plaintiff's healthcare providers or to the general public.

78.    Given Exactech's deliberate actions designed to deceive or mislead Plaintiff, Plaintiff's healthcare providers, and the general public with respect to the safety and efficacy of Exactech's TKA and TAA systems, Defendants are estopped from relying on any statute of limitations defenses.

## COUNT ONE – STRICT LIABILITY – MANUFACTURING DEFECT

79.   Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

80.   At all relevant times, Exactech designed, tested, developed, manufactured, labeled, packaged, marketed, distributed, or sold the Optetrak, Truliant, and Vantage Systems for implantation into patients, such as Plaintiff, by orthopedic surgeons in the United States.

81.   Exactech had a duty to manufacture, pack, and distribute the Optetrak, Truliant, and Vantage Systems, including their component parts, in a manner that prevented unreasonable risk of harm or injury to patients, including Plaintiff.

82.   Exactech knew (or reasonably should have known) that its Optetrak, Truliant, and Vantage Systems were defective as manufactured.

83.   The Optetrak, Truliant, and Vantage Systems, as manufactured, were not reasonably safe as manufactured, packaged, or distributed by Exactech.

84.   The Optetrak, Truliant, and Vantage Systems, including their component parts, were defective as manufactured because Exactech:

> a. packaged the polyethylene components of the Optetrak, Truliant, and Vantage Systems in vacuum bags that contained a secondary barrier layer containing ethylene vinyl alcohol (EVOH) to prevent the components from oxidizing before they were implanted;
>
> b.  selected materials to package the Optetrak, Truliant, and Vantage Systems, which were of an inferior grade or quality;

c.  failed to set appropriate manufacturing specifications to ensure that the Optetrak, Truliant, and Vantage Systems performed safely, appropriately, and as intended;

d.  failed to periodically test to ensure that the Optetrak, Truliant, and Vantage Systems as manufactured met Exactech's intended specifications;

e.  failed to establish internal quality control protocols and procedures to ensure that the Optetrak, Truliant, and Vantage Systems as manufactured met Exactech's intended specifications;

f.  failed to comply with internal quality control protocols and procedures to ensure that the Optetrak, Truliant, and Vantage Systems as manufactured met Exactech's intended specifications;

g.  failed to take corrective actions to eliminate or minimize further failures of the Optetrak, Truliant, and Vantage Systems;

h.  failed to select appropriate third-parties to package the polyethylene inserts used in the Optetrak, Truliant, and Vantage Systems;

i.  failed to properly supervise and monitor the packaging of the polyethylene inserts used in the Optetrak, Truliant, and Vantage Systems; and

j.  were otherwise negligent in the manufacture, packaging, or distribution of the Optetrak, Truliant, and Vantage Systems.

85.  The manufacturing defects in the Optetrak, Truliant, and Vantage

Systems existed when the devices left Exactech's control.

86.    Plaintiff's doctors implanted the Optetrak, Truliant, or Vantage Systems in the manner in which it was intended and recommended to be used, making such use reasonably foreseeable to Exactech.

87.    The Optetrak, Truliant, and Vantage Systems, including their component parts, which were manufactured, packaged, or distributed by Exactech, reached patients, like Plaintiff, without substantial change in condition.

88.    Plaintiff could not, by the exercise of reasonable care, have discovered the manufacturing defect and perceived its dangers or avoided injury.

89.    Exactech is strictly liable for the defective manufacture of its Optetrak, Truliant, and Vantage Systems, the distribution, marketing, or sale of the defectively manufactured Optetrak, Truliant, and Vantage Systems and the injuries sustained by Plaintiff.

90.    As a direct and proximate result of one or more of these wrongful acts or omissions of Exactech, Plaintiff suffered profound injuries that are permanent and continuing in nature. These injuries required medical treatment and will require on-going medical treatment, resulting in significant past and future medical expenses. Additionally, Plaintiff suffered and will continue to suffer economic losses, loss of normal life, and physical and mental pain and suffering.

91.    **WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with pre-judgment and post-judgment interest, costs of suit, attorneys' fees, and all such

other and further relief as this Court deems just and proper.

## COUNT TWO – STRICT LIABILITY – DESIGN DEFECT

92.    Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

93.    At all relevant times, Exactech designed, tested, developed, manufactured, labeled, packaged, marketed, distributed, or sold the Optetrak, Truliant, and Vantage Systems for implantation into patients, such as Plaintiff, by orthopedic surgeons in the United States.

94.    Exactech had a duty to develop, design, and test both the Optetrak, Truliant, and Vantage Systems and their component parts, including the respective packaging of each, to produce a product that did not present an unreasonable risk of harm or injury to patients, including Plaintiff.

95.    Exactech knew (or reasonably should have known) that the Optetrak, Truliant, and Vantage Systems, as designed, presented an unreasonable risk of harm or injury to patients, including Plaintiff.

96.    Exactech knew (or reasonably should have known) that the Optetrak, Truliant, and Vantage Systems were not reasonably safe for its expected, intended, or foreseeable uses as designed by Exactech.

97.    As alleged herein, Exactech knew or had reason to know that the Optetrak, Truliant, and Vantage Systems caused an increased risk of harm to patients, like Plaintiff, due to the Optetrak, Truliant, and Vantage Systems' propensity to undergo substantial early polyethylene wear, component loosening, or

other failure causing serious complications, including grinding, swelling, tissue damage, instability, osteolysis, bone loss and other injuries, as well as the need for revision surgery in patients.

98.     The Optetrak, Truliant, and Vantage Systems, including their component parts and corresponding packaging, were defective as designed because Exactech:

a.   developed the Optetrak, Truliant, and Vantage Systems in a manner which resulted in a propensity to undergo substantial early polyethylene wear, component loosening, or other failure modes;

b.   failed to design the packaging for the polyethylene components of the Optetrak, Truliant, and Vantage Systems in vacuum bags that contained a secondary barrier layer to prevent the components from undergoing increased oxidation;

c.   designed the packaging of the Optetrak, Truliant, and Vantage Systems and their component parts to require materials which were of an inferior grade or quality;

d.   failed to conduct adequate testing on component parts, subassemblies, or finished Optetrak, Truliant, and Vantage Systems as packaged and distributed;

e.   failed to test an adequate number of samples of Optetrak, Truliant, and Vantage Systems on an ongoing basis to ensure they were safe and performed as designed;

    f.  failed to take adequate steps to specifically identify failure modes with the Optetrak, Truliant, and Vantage Systems with clarity and to suggest methods to monitor, avoid, or prevent further failures;

    g.  failed to identify or note the significance of any testing that resulted in failures of the Optetrak, Truliant, and Vantage Systems;

    h.  failed to take corrective actions to eliminate or minimize further failures of the Optetrak, Truliant, and Vantage Systems;

    i.  failed to adequately design packaging specifications for the components, subassemblies, or the finished Optetrak, Truliant, and Vantage Systems;

    j.  designed the polyethylene insert and packaging in a manner that increased the risk of users and patients suffering from pain, discomfort, injury and the need for revision surgery; and

    k.  were otherwise negligent in the development, design, or testing of the Optetrak, Truliant, and Vantage Systems.

99.    The design defects in the Optetrak, Truliant, and Vantage Systems and its packaging existed when the devices left Exactech's control.

100.    Plaintiff's doctors implanted the Optetrak, Truliant, or Vantage System in the manner intended, making such use reasonably foreseeable to Exactech.

101.    The Optetrak, Truliant, or Vantage Systems as designed by Exactech reached Plaintiff and other patients without substantial change in its condition.

102.    The Optetrak, Truliant, and Vantage Systems and their packaging as

designed carried risks that were outweighed by any utility of the design of the devices and packaging because when paired together with the devices, the Optetrak, Truliant, and Vantage Systems were dangerous to an extent beyond that which would be contemplated by the ordinary consumer.

103.    The Optetrak, Truliant, or Vantage Systems and their packaging were defective in design and unreasonably dangerous when they entered the stream of commerce and received by Plaintiff, because the foreseeable risks exceeded or outweighed the purported benefits associated with the devices.

104.    Feasible safer alternative designs providing the same functional purpose were available to Exactech at the time the Optetrak, Truliant, and Vantage Systems were designed and packaged and offered for sale in the market.

105.    For example, Exactech could have utilized vacuum bags containing a secondary barrier layer containing ethylene vinyl alcohol (EVOH), like other manufacturers in the industry do, to prevent the polyethylene components from undergoing increased oxidation.

106.    At no time did Plaintiff (or Plaintiff's doctors) have any reason to believe that the Optetrak, Truliant, or Vantage Systems and their packaging were in a condition not suitable for proper and intended use.

107.    Plaintiff could not, by the exercise of reasonable care, have discovered these design defects and perceived its dangers or avoided injury.

108.    Exactech is strictly liable for the defective design of the Optetrak, Truliant, and Vantage Systems and their component parts, including the respective

packaging of each.

109.    As a direct and proximate result of one or more of these wrongful acts or omissions of Exactech, Plaintiff suffered profound injuries that are permanent and continuing in nature.  These injuries required medical treatment and will require on-going medical treatment, resulting in significant past and future medical expenses. Additionally, Plaintiff suffered and will continue to suffer economic losses, loss of normal life, and physical and mental pain and suffering.

110.    **WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with pre-judgment and post-judgment interest, costs of suit, attorneys' fees, and all such other and further relief as this Court deems just and proper.

## COUNT THREE – STRICT LIABILITY – FAILURE TO WARN

111.    Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

112.    At all relevant times, Exactech designed, tested, developed, manufactured, labeled, packaged, marketed, distributed, or sold the Optetrak, Truliant, and Vantage Systems for implantation into patients, such as Plaintiff, by orthopedic surgeons in the United States.

113.    Exactech had a duty to provide adequate warnings and instructions regarding the Optetrak, Truliant, and Vantage Systems (and their use) so that its TKA and TAA systems did not present an unreasonable risk of harm or injury to patients, including Plaintiff.

114.    Exactech knew or reasonably should have known and been aware that the Optetrak, Truliant, and Vantage Systems and its packaging contained inadequate warnings and instructions.

115.    The Optetrak, Truliant, and Vantage Systems and their corresponding packaging are not reasonably safe as labeled, distributed, marketed, delivered or sold by Exactech.

116.    The Optetrak, Truliant, or Vantage Systems were defective and unreasonably dangerous when they entered the stream of commerce and were received by Plaintiff and Plaintiff's doctors, because the warnings in the instructions for use, operative techniques, directions, marketing and promotional materials, advertisements, white papers, and other communications provided by Exactech or its sales force to doctors and patients with or about the Optetrak, Truliant, and Vantage Systems failed to adequately convey the potential risks and side effects of the Optetrak, Truliant, and Vantage Systems and the dangerous propensities of the devices, which risks Exactech knew (or reasonably should have known).

117.    Exactech further failed to adequately disclose the devices' propensity to undergo substantial early polyethylene wear, component loosening or other failure causing serious complications, including grinding, swelling, tissue damage, instability, osteolysis, bone loss and other injuries, as well as the need for revision surgery in patients.

118.    The instructions for use, operative techniques, directions, marketing and promotional materials, advertisements, white papers, and other communications

regarding the Optetrak, Truliant, or Vantage Systems were additionally defective because they did not provide instructions concerning how—if at all—the risks associated with the Optetrak, Truliant, or Vantage Systems could be avoided, minimized, detected, or treated.

119.   The inadequate warnings for the Optetrak, Truliant, and Vantage Systems existed when the devices left Exactech's control.

120.   Upon information and belief, both of Plaintiff's Exactech TKA Systems reached Plaintiff (and Plaintiff's doctor) without substantial change in their condition.

121.   Upon information and belief, during both procedures, Plaintiff's doctor followed the instructions provided by Exactech with regard to the implantation of his Exactech TKA Systems.

122.   Plaintiff (and Plaintiff's doctor) could not, by the exercise of reasonable care, have discovered these defects and perceived their dangers or avoided injury.

123.   Exactech is strictly liable for providing inadequate warnings accompanying the Optetrak, Truliant, and Vantage Systems and their component parts, including the respective packaging of each.

124.   As a direct and proximate result of one or more of these wrongful acts or omissions of Exactech, Plaintiff suffered profound injuries that are permanent and continuing in nature.  These injuries required medical treatment and will require on-going medical treatment, resulting in significant past and future medical expenses. Additionally, Plaintiff suffered and will continue to suffer economic losses, loss of

normal life, and physical and mental pain and suffering.

125.   **WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with pre-judgment and post-judgment interest, costs of suit, attorneys' fees, and all such other and further relief as this Court deems just and proper.

## COUNT FOUR – NEGLIGENCE

126.   Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

127.   Exactech designed, tested, developed, manufactured, labeled, packaged, marketed, distributed, or sold the Optetrak, Truliant, and Vantage Systems for implantation into patients, such as Plaintiff, by orthopedic surgeons in the United States.

128.   At all relevant times, Exactech had a duty to exercise reasonable care in its design, manufacture, labeling, distribution, and sale of its Optetrak, Truliant, and Vantage Systems.

129.   As a medical device manufacturer, Exactech owed this duty of reasonable care not only to patients, like Plaintiff, but also to doctors, like Plaintiff's doctor.

130.   At all relevant times, and as discussed above, Exactech knew (or reasonably should have known) of the hazards, risks, and dangers of the Optetrak, Truliant, and Vantage Systems.

131.   Exactech knew (or reasonably should have known) that its misconduct

with respect to the Optetrak, Truliant, and Vantage Systems was likely to cause harm in patients, like Plaintiff.

132.    As described above, Exactech failed to exercise reasonable care with respect to its design, manufacture, labeling, distribution, and sale of its Optetrak, Truliant, and Vantage Systems. More specifically, Exactech failed to:

a.  reasonably and appropriately manufacture the Optetrak, Truliant, and Vantage Systems so to avoid an unreasonable risk of harm to patients;

b.  reasonably and appropriately package the Optetrak, Truliant, and Vantage Systems so to avoid an unreasonable risk of harm to patients;

c.  reasonably and appropriately distribute and store the Optetrak, Truliant, and Vantage Systems so to avoid an unreasonable risk of harm to patients;

d.  reasonably and appropriately design the Optetrak, Truliant, and Vantage Systems so to avoid an unreasonable risk of harm to patients;

e.  reasonably and appropriately label the Optetrak, Truliant, and Vantage Systems so to avoid an unreasonable risk of harm to patients; and

f.  were otherwise negligent.

133.    As a direct and proximate result of one or more of these wrongful acts or

omissions of Exactech, Plaintiff suffered profound injuries that are permanent and continuing in nature.  These injuries required medical treatment and will require ongoing medical treatment, resulting in significant past and future medical expenses. Additionally, Plaintiff suffered and will continue to suffer economic losses, loss of normal life, and physical and mental pain and suffering.

134.  **WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with pre-judgment and post-judgment interest, costs of suit, attorneys' fees, and all such other and further relief as this Court deems just and proper.

**COUNT FIVE —VIOLATION OF THE NEW YORK
CONSUMER PROTECTION FROM DECEPTIVE ACTS AND PRACTICES**

135.  Plaintiff repeats, reiterates, and incorporates by reference every allegation of this Complaint contained in each of the foregoing paragraphs, including specifically, paragraphs 38 through 47.

136.  At all times relevant, the New York Consumer Protection from Deceptive Acts and Practices ("New York CPDAP") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §349.

137.  Upon information and belief, as discussed herein, Exactech, at all relevant times, engaged in deceptive acts by omitting significant and material facts in connection with its labeling, advertisement, marketing and sale of its TKA and TAA Systems.

138.  Upon information and belief, as discussed herein, Exactech, at all

relevant times, engaged in deceptive acts by omitting significant and material facts in connection with its labeling, advertisement, and sale of its TKA and TAA Systems.

139.   Upon information and belief, as discussed herein, Exactech, at all relevant times, misrepresented the benefits of it TKA and TAA Systems by omitting significant and material facts in its marketing, promotion, sale, and labeling of its TKA and TAA Systems, including the fact that its TKA and TAA Systems were likely to fail prematurely causing serious injuries.

140.   Instead of including applicable warnings or appropriate instructions, Exactech misleadingly advertised only the purported benefits of its TKA and TAA Systems, but did not disclose the risks specific to its TKA and TAA Systems.

141.   Instead of including truthful statements regarding the materials used in Exactech TKA Systems, Exactech lied; it represented that its TKA Systems included only the best materials, when, in fact, the opposite was true. It was systematically and consistently using sub-standard materials and not adhering to basic medical device manufacturing principles when manufacturing its TKA Systems, including the defective polyethylene liners.

142.   Such deceptive acts were directed not only at physicians, but also at potential patients and the general public.

143.   Statements made with respect to the quality and performance of Exactech's TKA Systems were widely and publicly available, including on Exactech's website.

144.   Such deceptive acts were undertaken to entice physicians to recommend

Exactech products and for patients to accept that recommendation.

145.   And, indeed, Plaintiff and his physician did see such advertisement and representations, which detailed the purported quality, excellence, and superiority of Exactech's products.

146.   Upon information and belief, such statements and representations—particularly those that related to the quality of the materials used—formed, at least in part, the basis for the decision of Plaintiff's physician to recommend an Exactech implant.

147.   Such statements and representations—particularly those that related to the quality of the materials used—formed, at least in part, the basis for the decision of Plaintiff to accept his physician's recommendation and to consent to having an Exactech system implanted.

148.   Such advertisements and statements with respect to Exactech's TKA and TAA Systems were misleading, deceptive, demonstrably false, and violated the New York CPDAP.

149.   As a result of violating the New York CPDAP, Exactech caused Plaintiff's healthcare providers to recommend and implant an Exactech TKA System, and Plaintiff's to accept that recommendation, which caused severe injuries and damages as previously described herein.

150.   Additionally, and in the alternative, as a result of violating the New York CPDAP, Exactech also caused Plaintiff's injuries to go undetected for a period of time, causing them to be more severe than they otherwise would have been, if

Plaintiff had been given appropriate information concerning the actual performance of the device, due to the substandard materials used, and had been advised to seek medical treatment and/or intervention sooner.

151.    Additionally, and in the alternative, as a result of violating the New York CPDAP, Exactech also caused Plaintiff to be implanted with another Exactech TKA System, causing him to be more likely to suffer another premature TKA failure in the future.

152.    Had Exactech timely disclosed its substandard manufacturing practices, no reasonable physician would have recommended an Exactech TKA System, and no reasonable patient, including Plaintiff, would have insisted on receiving an Exactech TKA System; thus, Plaintiff would have avoided a second Exactech implant (and the resulting premature failure) entirely.

153.    Accordingly, Plaintiff is entitled to damages under the New York CPDAP.

## **PUNITIVE DAMAGES**

154.    Plaintiff adopts and incorporates by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows:

155.    Exactech's misconduct described herein consisted of gross negligence, recklessness, oppression, fraud, or malice, and was done with advance knowledge, willful and wanton disregard for the safety and health of Plaintiff and others, or ratification by Exactech's officers, directors, or managing agents.

156.    Despite its knowledge that the Optetrak, Truliant, and Vantage

Systems were failing at higher rates and causing serious injuries, Exactech chose profits over the safety of patients when they sold and marketed a device posing significant health risks.

157.    Despite having sufficient knowledge to appreciate the risks related to the propensity of Exactech's Optetrak, Truliant, and Vantage Systems to fail—which Defendant's knew was likely to result in serious injuries—Exactech intentionally and recklessly failed to warn patients, doctors, or the general public.

158.    Despite having sufficient knowledge to appreciate the risks related to the propensity of Exactech's Optetrak, Truliant, and Vantage Systems to fail—which Defendant's knew was likely to result in serious injuries—Exactech chose not to initiate a recall until recently.

159.    Exactech's decisions with respect to its defective TKA and TAA systems show a conscious indifference to the health and safety of the millions of patients.

160.    Instead of deciding to better understand this failure and to warn the public, Exactech downplayed and recklessly disregarded its knowledge of the defective nature of the Optetrak, Truliant, and Vantage Systems' potential for causing serious injuries. Instead of releasing truthful information, correcting the defect, or providing adequate warnings, Exactech chose to instead disseminate misleading information regarding the safety (and failure rates) of its TKA and TAA systems in an effort to mislead patients, doctors, and the public.

161.    As a result of Exactech's own misconduct, both Exactech, Inc., and Exactech US, Inc., are liable for punitive damages in an amount to be determined by

a jury.

## PRAYER FOR RELIEF

162.    Plaintiff respectfully requests the following damages be considered separately and individually for the purpose of determining the sum of money that will fairly and reasonably compensate Plaintiff:

a.    Plaintiff's medical expenses, physical pain and suffering, and other compensatory damages to be proven at trial;

b.    Damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, loss of consortium, and other non-economic losses sustained as a result of Exactech's misconduct;

c.    Past, present, and future out-of-pocket costs, lost income, revenue, profits, or business opportunity, lost earning capacity, and costs related to medical treatment which have or may be recommended for Plaintiff;

d.    Attorney's fees, expenses, and recoverable costs incurred in connection with this action;

e.    Plaintiff's Loss of Enjoyment of Life;

f.    Pre- and Post-Judgment Interest; and

g.    Such other relief to which Plaintiff may be justly entitled.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury on all counts and as to all issues.

Dated: February 7, 2023                    Respectfully Submitted,

                                           /s/    Ben C. Martin
                                           Ben C. Martin (TX Bar No.: 13052400)
                                           **BEN MARTIN LAW GROUP**
                                           3141 Hood Street, Suite 600
                                           Dallas, TX 75219
                                           Telephone: (214) 761-6614
                                           Facsimile: (214) 744-7590
                                           bmartin@martinbaughman.com